Joseph L. Oliva, Esq. (SBN 113889)
Matthew R. Toothacre, Esq. (SBN 330298)
**JOSEPH OLIVA & ASSOCIATES, P.C.**
11956 Bernardo Plaza Dr. #532
San Diego, CA 92128
Phone (858) 304-7400
oliva@olivafirm.com
mtoothacre@olivafirm.com

Attorneys for Plaintiff,
BRIDLEWOOD ESTATES PROPERTY OWNERS ASSOCIATION

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIDLEWOOD ESTATES PROPERTY OWNERS ASSOCIATION, a California Nonprofit Corporation;<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation;<br><br>Defendant. | Case No.: **'23 CV 0195 AJB  AHG**<br><br>**BRIDLEWOOD ESTATES PROPERTY OWNERS ASSOCIATION COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT-FAILURE TO DEFEND**<br>2. **BREACH OF CONTRACT-FAILURE TO SETTLE / INDEMNIFY**<br>3. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING-FAILURE TO DEFEND**<br>4. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING-FAILURE TO SETTLE / INDEMNIFY**<br>5. **DECLARATORY RELIEF**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff, BRIDLEWOOD ESTATES PROPERTY OWNERS ASSOCIATION, a California Nonprofit Corporation, alleges causes of action against STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation ("Defendant"), as follows:

/ / /

/ / /

**THE PARTIES**

1.     Plaintiff, BRIDLEWOOD ESTATES PROPERTY OWNERS ASSOCIATION (hereinafter "Plaintiff" or "Bridlewood") at all times mentioned herein was and is a California Nonprofit corporation, duly incorporated and existing under the laws of the State of California, with its principal place of business in San Diego County, California. Bridlewood manages a common interest development located in the City of Poway, County of San Diego, California.

2.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant to the subject matter of this litigation, STATE FARM GENERAL INSURANCE COMPANY (hereinafter "STATE FARM") was and is an Illinois corporation, duly incorporated and existing under the laws of the State of Illinois, with its principal place of business in the State of Illinois. STATE FARM was and is at all relevant times either admitted to do business as an insurer under the laws of the State of California or authorized to sell insurance in the State of California through a licensed surplus broker.

**JURISDICTION**

3.     This Court has original jurisdiction under 28 U.S.C. Section 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of the costs and interest, the sum or value of $75,000.

4.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(a) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5.     This is an action for declaratory judgment pursuant to the Federal Declaratory Relief Act, 28 U.S.C. Section 2201, for purposes of determining an actual controversy between the parties.

**FACTUAL BACKGROUND OF COVERAGE DISPUTE**

6.     STATE FARM issued a Directors and Officers Liability endorsement

to a non-profit property owners association, Bridlewood. The dispute arose when Bridlewood was sued in an underlying transaction because of the alleged non-payment of a contractor's invoice. However, payment was made by Bridlewood, through its officer/Treasurer, but payment was misdirected due to hacking of the contractor's email system, causing the officer of Bridlewood to wire payment into the hacker's bank account. To the extent liability is found in the underlying action brought by the contractor, the basis of liability would be the Bridlewood officer's actual or alleged error, act, omission, neglect, or breach of duty (defined as a "wrongful act" under the policy) triggering coverage. STATE FARM denied coverage outright asserting the dispute with the contract is nothing more than an economic dispute of monies owed and, in doing so, STATE FARM ignored the facts giving rise to the liability faced by Bridlewood, i.e. potential liability based on the officer/Treasurer failing to identify the proper location to wire the payment to the contractor. Based on the extrinsic evidence provided to STATE FARM, STATE FARM owed a duty to defend based on the possibility of coverage and, to the extent liability is ultimately based on a "wrongful act" of Bridlewood's officer/Treasurer, Bridlewood owes a duty to indemnify.

## **THE POLICY**

7.      STATE FARM made, executed, and delivered a Residential Community Association Policy to Bridlewood Policy Number 90-62-7245-6 (the "Policy"), effective August 5, 2022 to August 5, 2023. A true and accurate copy of the Business Owner's Coverage Form CMP-4101 relating to the Policy is attached hereto as **Exhibit "A."**

8.      The Policy includes endorsement CMP-4814, which provides directors and officer liability coverage under the Policy (the "Endorsement"). A true and accurate copy of the Policy containing the Endorsement is attached hereto as **Exhibit "B."**

9.      Endorsement CMP-4814, "Directors and Officers Liability" provides coverage for the wrongful acts of Bridlewood's directors and officers subject to a $3,000,000.00 limit of liability. Specifically, the Endorsement states:

"CMP – 4814  DIRECTORS AND OFFICERS LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

1. The following coverage is added to SECTION II – LIABILITY:

DIRECTORS AND OFFICERS LIABILITY

a.      When a Limit Of Insurance is shown in the Declarations for Directors And Officers Liability, we will pay those sums that the insured becomes legally obligated to pay as damages because of a 'wrongful act' to which this endorsement applies.

We will have the right and duty to defend the insured, by counsel of our choice, against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages to which this endorsement does not apply. We may at our discretion, investigate any incident and settle any claim or 'suit' with or without the insured's consent, for any reason and at any time. . . .

***

2.      With respect to coverage provided under Directors And Officers Liability, all exclusions

under Section II – Exclusions are replaced with the following:

***

5.    With respect to coverage provided under Directors And Officers Liability, the following definition is added to SECTION II — DEFINITIONS:

<u>'Wrongful act' means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted by an insured arising solely out of his or her capacity as director, officer, 'manager' or trustee relating to the operations of your organization.</u>

All other policy provisions apply." (emphasis added)

## THE TENDERS TO STATE FARM

10.    On or about September 27, 2022, Bridlewood received an invoice (the "Invoice") from Aztec Paving, Inc. (the "Aztec Paving") concerning asphalt repairs conducted by Aztec Paving at Bridlewood's property located at 16052 Country Day Road, Poway, California 92064 (the "Property"). The Invoice was for a total of $123,617.00. A true and accurate copy of the Invoice is attached hereto as **Exhibit "C."**

11.    The Invoice was sent via email on September 27, 2022, by Jon Seethaler, the Estimator/Project Manager of Aztec Paving ("Seethaler"), from his email address jon@aztecpaving.com. A true and accurate copy of this email chain is attached hereto as **Exhibit "D."**

12.    On or about September 27, 2022, a fake email address (jon@aztecpavlng.com) (the "Fake Email Address") replied to the email chain stating:

Do you know when the invoice is anticipated to be paid as Aztec Paving totally moved away from receiving check payments. In an effort to streamline and process payment faster due to the fact that we have been having to deal with an unreliable mail system in our firm which has affected our firm and made us move to a paperless payment process. Aztec Paving is asking payments to be deposited into our bank account via Wire Transfer onwards, this will ensure that payments are received in a timely manner to avoid business breakdown. We expect to end paper checks in the next 2 days so we need your cooperation to make this a success with your firm as 80% of our customers have been making payment electronically directly into our bank account.

Please advise on what is required to have us set up for Wire Transfer or I have to attach our banking remittance information for payment.

Thank you,

Jon Seethaler

Estimator/Project Manager

Aztec Paving, Inc.

(619) 465-9813

jon@aztecpaving.com

13.   Thereafter, on the same date, Barry Leonard of Bridlewood ("Leonard") responded to the email stating "I sent it to our HOA treasurer for processing." See **Exhibit "D."**

14. On or about September 28, 2022, Seethaler at Aztec Paving responded as follows:

> Hi Barry,
>
> Can I have our ACH payment forwarded to you to ensure that the payment is processed though ACH or please have your Treasurer copied to this email chain.

15. On the same date, Leonard responded identifying: "Owen Thomas is the HOA Treasurer and he is copied." See **Exhibit "D."**

16. On the same date, Jon Seethaler of Aztec Paving responded as follows:

> Hello Owen,
>
> Do you know when we can anticipate payment, as Aztec Paving totally moved away from receiving check payments. In an effort to streamline and process payment faster due to the fact that we have been having to deal with an unreliable mail system in our firm which has affected our firm and made us move to a paperless payment process. Aztec Paving is asking payments to be deposited into our bank account via ACH onwards, this will ensure that payments are received in a timely manner to avoid business breakdown. We expect to end paper checks in the next 2 days so we need your cooperation to make this a success with your firm as 80% of our customers have been making payment electronically directly into our bank account.

Please advise on what is required to have us set up for ACH or I have to attach our banking remittance information for payment.

Jon Seethaler

Esmator/Project Manager

Aztec Paving, Inc.

(619) 465-9813

jon@aztecpaving.com

17.     On the same date, Owen Thomas, the Treasurer and an officer of Bridlewood ("Thomas"), responded: "Let me figure out the best way to do this. Can you send me the invoice?" See **Exhibit "D."**

18.     On the same date, Seethaler of Aztec Paving responded stating: "Thanks for your prompt response, please see attached. Payment can also be sent either by Wire Transfer/ACH Payment." Thomas, Treasurer of Bridlewood, responded: "Thanks Jon. I think the best way is to do a wire transfer. Can you send me the wire transfer info?" See **Exhibit "D."**

19.     On September 29, 2022, the Fake Email Address (jon@aztecpavlng.com) attached wire instructions stating: "Please see attached for Aztec Paving Wire Transfer instructions and please advise on when the payment is anticipated to be paid." See **Exhibit "D."**

20.     On or about October 3, 2022, Thomas, Treasurer and officer of Bridlewood, wired $123,617.00 from Bridlewood's bank account to the wire instructions provided by the Fake Email Address. A true and accurate copy of Bridlewood's redacted Statement of Accounts reflecting the completed wire transfer is attached hereto as **Exhibit "E."**

/ / /

/ / /

21.     On or about October 6, 2022, Thomas received an email stating:

> Good Morning Owen,
>
> I was given your contact information by Barry Leonard.  We have yet to receive the wire transfer in our account.  We are concerned because we do not recall supplying our bank information to anyone.  Can you follow-up with bank regarding this?  Thank you.

A true and accurate copy of this email is attached hereto as **Exhibit "F."** Aztec alleged it never received the wire transfer made by Thomas on October 3, 2022.

22.     Thereafter, it was discovered the wiring instructions utilized by Thomas, in his capacity as Treasurer and officer of Bridlewood, were sent by the Fake Email Address, likely through hacking into Aztec's email server, in response to the email chain attached as **Exhibit "D."** Thomas wired the $123,617.00 using the wiring instructions provided by the Fake Email Address, with the full intent to make payment to Aztec. To the extent Bridlewood is determined by the trier of fact in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action (defined below) to be found liable to Aztec, such liability, if any, was caused by Bridlewood's officer/Treasurer committing a wrongful act as such term is defined in the subject policy, i.e. an actual or alleged error, act, omission, neglect, or breach of duty. The potential liability of Bridlewood in the Aztec Action is based on the failure to verify with proper diligence the proper wiring instructions to wire the payment. The potential basis of liability triggers, at a minimum, the duty to defend.

23.     On or about October 11, 2022, Aztec Paving filed a California Preliminary Notice identifying that if Aztec was not paid in full a lien may be placed on the Bridlewood property (the "Aztec Paving Preliminary Notice"). The

preliminary notice was received by Bridlewood on or about October 12, 2022. A true and accurate copy of the preliminary notice is attached hereto as **Exhibit "G."**

24.    On or about October 12, 2022, Superior Ready Mix Concrete L.P. ("Superior") filed a California Preliminary Notice against Bridlewood (the "Superior Preliminary Notice"), which was received by Bridlewood on or about October 20, 2022. A true and accurate copy of the Superior Preliminary Notice is attached hereto as **Exhibit "H."**

25.    On or about October 20, 2022, the Aztec Paving Preliminary Notice and Superior Preliminary Notice were timely tendered to STATE FARM.

26.    On or about October 25, 2022, Aztec Paving's counsel sent a letter to Bridlewood demanding payment of $123,617 (the "Aztec Demand"). A true and accurate copy of the Aztec Demand is attached hereto as **Exhibit "I."**

27.    On or about October 31, 2022, Bridlewood tendered the Aztec Demand to STATE FARM.

28.    On or about November 16, 2022, Aztec Paving filed a Mechanic's Lien (the "Aztec Mechanic's Lien") for the sum of $143,450 against Bridlewood, which was received by Bridlewood on or about November 17, 2022. A true and accurate copy of the Aztec Mechanic's Lien is attached hereto as **Exhibit "J."**

## STATE FARM'S DENIAL OF COVERAGE TO BRIDLEWOOD

29.    On or about December 16, 2022, STATE FARM issued its first denial letter to Bridlewood for the Aztec Demand and Aztec Mechanic's Lien. A true and accurate copy of the December 16, 2022, denial letter is attached hereto as **Exhibit "K."**

30.    STATE FARM denied coverage asserting no allegations were made of damages because of a "wrongful act." Rather, STATE FARM asserted the liability sought to be imposed by Aztec against Bridlewood was not based on a "wrongful act" of an officer or director "but rather the failure of the Association to pay a contractual obligation and debt owed." STATE FARM asserted "[t]he

Directors and Officers Liability endorsement is intended to address a 'wrongful act' of an individual Director or Officer, not to pay for a direct liability of the Association."

31.     However, in denying coverage, STATE FARM unreasonably ignored the extrinsic evidence provided to STATE FARM in **Exhibit "D"** to this Complaint reflecting the insured's, Bridlewood, potential liability arising from the failure to pay $143,450 in order to avoid the foreclosure of the Aztec Mechanic's lien based on Bridlewood's Treasurer, who is a director or officer of Bridlewood, wiring money based on the wiring instructions provided by the Fake Email Address. The wiring of money by Bridlewood's officer/Treasurer constitutes a basis of potential liability arising from, if proven, the "actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted by an insured arising solely out of his or her capacity as director, officer, 'manager' or trustee relating to the operations of your organization" i.e. a "wrongful act" as that term is defined in the Policy.

32.     Thereafter, on or about December 19, 2022, Superior, a subcontractor of Aztec Paving, also filed a Mechanic's Lien against Bridlewood seeking $52,806.03 (the "Superior Mechanic's Lien"). A true and accurate copy of the Superior Mechanic's Lien is attached hereto as **Exhibit "L."**

33.     On or about, December 21, 2022, Aztec Paving formally filed suit against Bridlewood in the San Diego Superior Court, Central Division, entitled *Aztec Paving, Inc. v. Bridlewood Estates Property Owners Association*, Case No. 37-2022-00051058-CU-BC-CTL (the "Aztec Action"). A true and accurate copy of the operative complaint in the Action is attached hereto as **Exhibit "M."**

34.     On or about January 13, 2023, Bridlewood again tendered to STATE FARM the defense and indemnity obligation pursuant to the terms of the Policy with respect to the Aztec Mechanic's Lien and Superior Mechanic's Lien.

Attached to the January 13, 2023, letter was the email chain (**Exhibit "D"**) identifying the wire instructions sent by the Fake Email Address to Bridlewood, which was utilized by Bridlewood's Treasurer, Thomas, to wire the $123,617.00, and which was allegedly not received by Aztec Paving. The tender letter contained the extrinsic evidence, i.e. the email chain containing the factual basis of why the payment was not received by Aztec Paving which creates the basis of potential liability arising from a wrongful act – the negligent failure to ascertain the correct wiring instructions. STATE FARM, upon receipt of the extrinsic evidence triggering at a minimum the possibility of coverage, denied coverage constituting an unreasonable denial of coverage under California law. While Bridlewood denies all liability in the Aztec's Mechanic's Lien and Superior Mechanic's Lien and nothing stated herein shall constitute a waiver of any defense by Bridlewood, such evidence triggers, at a minimum, the possibility of coverage under the Aztec's Mechanic's Lien and Superior Mechanic's Lien triggering the duty to defend.

35.     Bridlewood identified to STATE FARM a carrier must defend if extrinsic evidence (see **Exhibit "D"**) creates a possibility of coverage, and the defense obligation is not excused unless a carrier can provide undeniable evidence, undisputed facts, and/or conclusive proof of the absence of any possibility of coverage. *Buss v. Superior Court* (1997) 16 Cal.4th 35; *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287.

36.     After sending the January 13, 2023 letter, Bridlewood was formally served with the Aztec Action.

37.     On or about January 18, 2023, Bridlewood tendered the Aztec Action to STATE FARM demanding that STATE FARM agree to indemnify and defend Bridlewood with respect to the Aztec Mechanic's Lien, Superior Mechanic's Lien, and the Aztec Action. A true and accurate copy of the January 18, 2023 letter is attached hereto as **Exhibit "N."**

38.     Attached to the January 18, 2023, letter again was the email chain identifying the wire instructions sent by the Fake Email Address to Bridlewood, which was utilized by Bridlewood's officer/Treasurer, Thomas, to wire the $123,617.00, which forms the basis of potential liability to Bridlewood arising from a wrongful act, as that term is defined in the Policy. This extrinsic evidence, which is fully known to STATE FARM, again reflects further bases upon which STATE FARM had both a duty to defend and indemnify Bridlewood under the Policy. While Bridlewood denies all liability with respect to the Aztec Mechanic's Lien, Superior Mechanic's Lien, and the Aztec Action, and nothing stated herein shall constitute a waiver of any defense by Bridlewood, such evidence triggers the possibility of coverage under the Policy. Namely, the documented extrinsic evidence triggers a duty to defend in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and the Aztec Action.

39.     Moreover, STATE FARM has failed to respond to Bridlewood's tender of the Aztec Action dated January 18, 2023.

40.     On or about January 20, 2023, STATE FARM denied coverage to Bridlewood for the Aztec Mechanic's Lien and the Superior Mechanic's Lien but, as set forth in **Exhibit "O"**, there was no response to the tender of the Aztec Action. A true and accurate copy of the January 20, 2023 letter is attached hereto as **Exhibit "O."** The filing and recordation of mechanic's liens constitutes a "suit" as that term is defined in the Policy because they are civil filings or proceedings in which damages are being sought.

41.     STATE FARM denied coverage to Bridlewood despite the extrinsic evidence supplied to STATE FARM on two separate occasions identifying a "suit", defined as a civil proceeding in which damages to which the Policy applies are alleged, seeking damages because of a "wrongful act," i.e. the wiring of funds by Thomas, in his capacity as Bridlewood's officer/Treasurer, using the wiring instructions provided by the Fake Email Address and resulting in the funds

allegedly not being received by Aztec, which is the potential basis of liability. STATE FARM has also failed to respond to Bridlewood's tender of defense and indemnify as to the Aztec Action. At all material times, Bridlewood has denied liability in each of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action and continues to deny any liability whatsoever with respect to the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action described herein. Nothing herein shall constitute a waiver and is only presented for the sole basis as a trigger of liability coverage owed under the STATE FARM Policy.

42. STATE FARM unreasonably denied coverage to Bridlewood with knowledge of extrinsic facts, including **Exhibit "D"** to this Complaint, which contained a "wrongful act", as that term is defined in the Policy, by one of its officers or directors, Thomas, acting on behalf of Bridlewood. With respect to the face of the Aztec Action, under California law, a defense was owed because of the extrinsic evidence identifying potential liability arising from a wrongful act – the possibility of liability being imposed on the negligent failure to secure proper wiring instructions from an authorized person employed by Aztec. At all material times, the officer/Treasurer of Bridlewood did not know he was responding to someone not authorized by Aztec Paving to send wire instructions. Under California law, a carrier has the duty to defend if facts are presented on the face of the complaint, or through extrinsic evidence, constituting a wrongful act that forms the basis of liability whether or not properly pled by the claimant. *Vandenberg v. Superior Court*, 21 Cal.4th 815, 839 (1999) [even if a cause of action by a third party is couched on a breach of contract, the possibility of coverage still exists triggering the duty to defend if the facts otherwise known to the carrier as to the basis of the claim falls within the parameters of coverage, i.e. a wrongful act.] In order to support its basis of denial, STATE FARM ignored the facts made known to it that would trigger the potentiality of coverage.

43.     Commencing from the date of tender of the defense of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action, STATE FARM should have, but has wrongfully failed to agree to participate in the defense of Bridlewood in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action pursuant to the terms and conditions of the Policy. Notwithstanding the legal obligation to participate in the defense of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action on behalf of Bridlewood, STATE FARM has instead acted adverse to Bridlewood's interests and placed its economic interests ahead of its insured.

44.     As a result of these claims in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action, Bridlewood has been compelled to incur loss and adjustment, defense, settlement, mitigation, and/or investigative costs as well as attorneys' fees, costs, expert fees and other expenses causing financial harm to Bridlewood in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action. In addition, Bridlewood has incurred attorney's fees and costs in pursuing coverage unreasonably withheld by STATE FARM. Based on the denial, Bridlewood will incur additional fees and costs in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action and in pursuing coverage unreasonably withheld.

45.     Upon receipt of the tenders of the defense of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action, STATE FARM was required to defend the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action immediately pursuant to the terms and conditions of the Policy and Endorsement at issue.  Notwithstanding the legal obligation to participate in the defense of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action, STATE FARM failed to fund the defense of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action as required under the terms of the Policy and Endorsement at issue.

46.  Pursuant to the Policy referred to hereinabove, STATE FARM promised to pay all sums which Bridlewood became obligated to pay because of a "wrongful act", during the effective coverage period of the policy, and further agreed to defend Horizon with respect to any suit seeking those damages, even if any of the claims were groundless, false or fraudulent.  Bridlewood is informed and believes, and thereon alleges, that the legal effect of the above-described Policy and Endorsement is as set forth in this paragraph and herein.

47.  Parties in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action have in fact made allegations and claims indicating, or evidence is otherwise available, that a "wrongful act" occurred during the effective periods of the insurance Policy issued by STATE FARM.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Failure to Defend)

### (By Plaintiff and Against STATE FARM)

48.  Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

49.  As set forth above, Defendant among other things, pursuant to the Policy terms and conditions, agreed to investigate, adjust, immediately defend, and settle the claims asserted against Plaintiff on account of a wrongful act, falling within or potentially falling within the coverage of, or as defined in, the Policy and Endorsement referenced herein.

50.  Pursuant to the Policy and Endorsements, Defendant also had a duty to conduct a reasonable, adequate and diligent investigation of any claims made against Plaintiff and affecting the Defendant's duty to defend.

51.  Plaintiff is informed and believes and thereon alleges that Defendant has issued an insurance Policy as attributed to it hereinabove.  Said Policy sold does in fact at a minimum potentially cover one or more of the allegations raised in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action and

requires Defendant to fully defend and indemnify Plaintiff in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action.

52.   Plaintiff has duly tendered the defense of each of the claims made against it in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action to Defendant, but Defendant has expressly refused to defend Plaintiff for the claims brought against it in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action.

53.   Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of the Policy, except to the extent that Plaintiff was prevented by Defendant or excused from such performance, or said conditions, covenants and promises have accrued or have been waived.

54.   As a result of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action, Plaintiff has been forced to incur settlement, repair, loss, adjustment and investigative costs, including attorneys' fees and costs, experts' fees and costs, court costs and other expenses, because of a wrongful act falling within, or potentially falling within the coverage of, or as defined in, the Policy and Endorsement.   In breach of the Policy, Defendant through their officers and/or managerial agents, have refused and continue to refuse to pay and/or reimburse Plaintiff for the costs of defense, repair, loss adjustment, mitigation, investigation and other costs and expenses as a result of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action.

55.   Plaintiff is informed and believes and thereon alleges that Defendant did not reasonably or diligently investigate the claims asserted by the claimants in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action against Plaintiff or acknowledge and/or accept Plaintiff's request for defense and/or coverage as to the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action.

56.   The failure and refusal of Defendant to adequately investigate the claims made against Plaintiff by the claimant in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action; the failure and refusal to provide an appropriate defense and/or coverage to Plaintiff without such an adequate investigation; and the failure and refusal of Defendant to adequately respond to the tenders of defense and/or coverage and other correspondence from Plaintiff also constitutes breaches of the terms and conditions of the Policy at issue.

57.   By reason of the Defendant's refusal to defend Plaintiff pursuant to the express obligation to do so in the insurance Policy, Defendant has breached its written contract of insurance under which Plaintiff is entitled to coverage as a named insured. Note, based on the definition of insured under the Policy, officer/Treasurer Thomas is also entitled to defense and indemnification by STATE FARM.

58.   As a direct and proximate result of the breaches by Defendant of its duties, Plaintiff has incurred substantial attorneys' fees and costs, experts' fees and costs, costs and other expenses in defense, loss adjustment, mitigation, investigation and other costs and expenses in an amount within the jurisdictional limits of this Court, according to proof.

59.   As a direct and proximate result of the Defendant's breaches of its contractual duties and in mitigation of Plaintiff's own damages, Plaintiff has incurred attorneys' fees and costs, experts' fees and costs and other costs and expenses in bringing this action, in an amount according to proof.  Plaintiff has been damaged in an amount in excess of the $75,000 jurisdictional requirements of this Court, in an amount to be established at the time of trial, according to proof.

/ / /

/ / /

/ / /

/ / /

## SECOND CAUSE OF ACTION

### Breach of Written Contract – Failure to Settle/Indemnify

### (By Plaintiff and Against STATE FARM)

60.     Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

61.     Plaintiff is informed and believes and thereon alleges that the Defendant issued the insurance Policy as set forth above and that said Policy does in fact extend coverage with reference to the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action filed against Plaintiff as an insured; and that said Policy does in fact apply to a wrongful act for matters for which Plaintiff was sued in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action, requiring Defendant to indemnify Plaintiff in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action.

62.     Plaintiff has duly tendered the defense of each of the claims made against it in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action to Defendant in Plaintiff's capacity as an insured.  Defendant has expressly refused to indemnify Plaintiff for the claims brought against Plaintiff in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action.

63.     Plaintiff requested and demanded indemnification for the claims made against it in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action to Defendant. Defendant failed and refused to acknowledge and recognize that all claims in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action are in fact covered, or expressly and unequivocally refused to indemnify Plaintiff for all of the claims brought against Plaintiff in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action as required under the terms of the Policy and under California law.

64.     Plaintiff has performed all conditions, covenants and promises required of it to be performed in accordance with the terms and conditions of the

Policy, except to the extent that Plaintiff is prevented by Defendant or excused from such performance, or said conditions, covenants and promises have occurred or been waived.

65.   By reason of Defendant's refusal to indemnify Plaintiff despite its express obligation to do so under the insurance Policy and Endorsement Defendant has breached its written contract of insurance under which Plaintiff is entitled to coverage as a named insured.

66.   As a direct and proximate result of the breaches of Defendant, Plaintiff has been damaged in excess of the $75,000 jurisdictional requirements of this Court, in an amount to be established at the time of trial, according to proof.

## THIRD CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing – Failure to Defend**

**(By Plaintiff and Against STATE FARM)**

67.   Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

68.   The Defendant at all material times had the duty to act fairly and in good faith to Plaintiff in carrying out their responsibilities under its Policy of insurance.

69.   Pursuant to the insurance Policy, the Defendant had implicit obligations to act fairly and in good faith to Plaintiff to promptly and reasonably investigate claims against Plaintiff, and to make reasonable coverage decisions. The Policy identified herein is subject to an implied covenant of good faith and fair dealing such that no party will disturb the rights of the other to obtain the full benefits of the contract.  Defendant has breached the implied covenant of good faith and fair dealing when unreasonably refusing to defend the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action, and/or to provide necessary

coverage(s) owed under the Policy when tendered, and at all material times thereafter, notwithstanding repeated requests to do so.

70. Plaintiff is informed and believes, and on such basis alleges that the Defendant breached its obligation to act fairly and in good faith towards Plaintiff by committing, among other things, the following acts and omissions:

a. Unreasonably refusing to immediately defend Plaintiff in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action after receipt of tender thereof and repeated communications from Plaintiff to Defendant, and each of them, thereafter;

b. Failing to conduct a reasonable investigation, including into extrinsic evidence, and unreasonably withholding monetary payment of the defense;

c. Causing Plaintiff severe financial hardship by refusing to defend;

d. Failing to give a reasonable interpretation to the provisions of the Endorsement, failing to reasonably apply provisions of the Endorsement to the claims, and unreasonably refusing to acknowledge that the claims asserted against Plaintiff in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action were and are potentially covered, and failing to timely, promptly and without delay, pay for the reasonable and necessary defense incurred after the tender;

e. Failing to give a reasonable interpretation to the provisions of the Policy, failing to reasonably apply provisions of the Policy to the claims, and unreasonably refusing to acknowledge that the claims asserted against Plaintiff in the Aztec Action were and are potentially covered, and failing to timely, promptly and without delay, pay for the reasonable and necessary defense incurred after the tender;

f. Failing to provide Plaintiff with any reasonable or justifiable basis for the decision to deny and/or delay the actual participation of the defense of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action;

g.      Interpreting the provisions of the Policy and Endorsement and the factual circumstances so as to resolve ambiguities and uncertainties against Plaintiff and to favor their own economic interests;

h.      Misrepresenting the insurance Policy provisions and Endorsement;

i.      Embarking on a course of conduct and pattern and practice, whereby the Defendant would fail and/or refuse to respond to tenders made by or on behalf of Plaintiff and/or to acknowledge the defense obligation owed to Plaintiff and/or to participate in the mounting and funding of the defense of Plaintiff with respect to a "wrongful act", including without limitation the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action;

j.      Continuing to pursue such course of conduct and pattern and practice after California case law established the immediacy of the defense obligation owed and where the duty to defend is based on the mere potentiality of coverage. The Defendant has disobeyed clear legal precedent in a known manner in clear and conscious disregard to Plaintiff's rights;

k.      Continuing to pursue such course of conduct and pattern and practice of not providing any reasonable basis to delay, reject, or deny the defense tendered and requested when provided extrinsic evidence as well as the refusal of Defendant to review the four corners of the complaint for triggering an immediate defense upon tender of a potentially covered claim, and the importance of an insurer's obligation to defend its insured immediately upon tender of defense;

l.      Continuing to pursue such course of conduct and pattern and practice after publication of, and notwithstanding the ruling of the California Supreme Court in *Buss v. Superior Court* (1997) 16 Cal.4th 35, where the California Supreme Court emphasized to California insurers the importance of the defense obligation, the entirety of the defense obligation, and the immediacy of the defense obligation;

m.      Pursuing such a course of conduct and pattern and practice, notwithstanding the terms of the Policy imposing a duty to immediately defend potentially covered claims asserted against the insured, notwithstanding repeated advisements of the California Supreme Court over the last thirty years of the breadth of the defense obligation, the immediacy of the defense obligation upon tender and the need to defend by funding of the defense, and notwithstanding repeated advisements of California Courts regarding the public policies supporting the obligation of an insurer to provide its insured an immediate defense; and

n.      Pursuing such a course of conduct and pattern and practice in violation of the terms of the Policy and California law with the knowledge, understanding, consent and approval of the defendant insurers' respective managing officers, directors, agents and employees.

71.    The foregoing acts and omissions were unreasonable, malicious, fraudulent, oppressive and despicable.

72.    The respective officers, directors and/or managing agents and/or employees of the Defendant participated in, authorized and/or ratified the wrongful conduct of said Defendant as alleged above.

73.    As a result of the bad faith conduct of the Defendant in this matter, Plaintiff has incurred substantial attorneys' fees, costs and expenses in defense, repair, loss adjustment, mitigation, investigation and settlement and other costs and expenses in response to the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action and has been required to bring this Complaint to enforce its rights as a named insured under the Policy mentioned herein.  Plaintiff is entitled to recover as damages against the Defendant, all the aforementioned fees, costs and expenses which it has incurred as a result of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action, together with interest thereon.   Plaintiff has suffered damages and will continue to suffer damages within the jurisdiction of this Court, according to proof.

74.     Plaintiff is further entitled to recover as damages against Defendant, all fees, expenses and costs incurred in this action to enforce its rights under the insurance Policy, plus interest thereon, according to proof.

75.     The above described conduct of Defendant has been and continues to be unreasonable, capricious and arbitrary, and constitutes breach of the covenant of good faith and fair dealing contained in each and all of the insurance Policy referred to above in this Complaint.   The above-described conduct further constitutes malicious, oppressive and despicable conduct and conscious disregard of Plaintiff's rights, and stems from improper and evil motives, including Defendant's desire to reduce or avoid their obligations to Plaintiff, so as to justify an award of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing - Failure to Settle/Indemnify**

**(By Plaintiff and Against STATE FARM)**

76.     Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

77.     Inherent in the insurance Policy issued by Defendant to Plaintiff as a named insured is an implied covenant of good faith and fair dealing which imposed upon Defendant the duty to deal fairly and honestly with Plaintiff in good faith and to do nothing to the detriment of Plaintiff, or to impair, interfere with, hinder, potentially deprive Plaintiff of its rights and benefits under said insurance Policy, including the indemnification of Plaintiff as a result of settlements, awards or judgments that may have been or may be imposed as a result of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action.   Defendant was under a further duty to honor the contractual obligations of indemnity contained in the applicable insurance Policy with respect to which the Plaintiff was a named insured.

78.    Defendant at all material times had the duty to act fairly and in good faith to Plaintiff in carrying out its responsibilities under the Policy of insurance.

79.    Pursuant to the insurance Policy, Defendant has implicit obligations to act fairly and in good faith to Plaintiff, to promptly and reasonably investigate claims against Plaintiff, and to make reasonable coverage decisions.

80.    Plaintiff has performed all conditions, covenants and promises on its part to be performed in connection with said insurance Policy, thereby securing the benefits of the insurance Policy, except to the extent that Plaintiff was prevented by the Defendant or excused from such performance, or said conditions, covenants and promises have occurred or been waived.

81.    Defendant has disregarded Plaintiff's rights under the insurance Policy and unreasonably, wrongfully, and in bad faith denied coverage, including refusing to indemnify Plaintiff herein under the insurance Policy as hereinabove alleged, Defendant (through its respective officers, directors and/or managing agents), has breached the implied covenant of good faith and fair dealing contained in the insurance Policy.  Said breach included, but is not limited to, the following:

a.    Unreasonably failing to timely and unequivocally confirm to Plaintiff that Defendant would acknowledge the existence and the validity of coverage under the Policy for each of the claims asserted against Plaintiff in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action and fully indemnify Plaintiff for such claims;

b.    Unreasonably failing to timely agree to pay its assertable and/or pro rata share of all indemnity obligations arising from the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action where settlement obligations of Defendant, and each of them, required Defendant to pay such damages;

c.    Inclusive in Defendant's respective obligations to act fairly and in good faith to Plaintiff is the Defendant's duty to properly and reasonably investigate claims against Plaintiff and to make reasonable coverage decisions.  The Defendant

breached its obligations to act fairly and in good faith toward Plaintiff by delaying the investigation, evaluation and confirmation of the coverage obligation, by ignoring or failing to or refusing to respond to Plaintiff's tender of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action and Plaintiff's repeated advisements thereafter and/or by acknowledging the obligation to Plaintiff under the Policy referenced herein, but refusing to comply with such obligations by refusing to participate in, fund or otherwise contribute to settlement of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action; and

d.     The Defendant's refusal to provide proper settlement authority owed to Plaintiff under the Policy, even though it was reasonably clear that the claims in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action were covered by the subject insurance Policy, has compelled Plaintiff to engage legal counsel and to initiate this Complaint to recover such indemnity benefits owed and to compel the Defendant to honor its obligations under the insurance Policy.

82.     Plaintiff is informed and believes and thereon alleges that the Defendant's refusal and denial through their respective officers, directors and/or managing agents of their duties to indemnify Plaintiff under their Policy was willful, malicious, intentional, and was done with the intent to oppress Plaintiff and with conscious disregard for Plaintiff's rights under the insurance Policy.  The Defendant's willful, malicious and oppressive conduct as hereinabove alleged was engaged in solely to satisfy their profit motives and corporate financial income objectives, to the detriment of Plaintiff.  This motive was evidenced by the Defendant's adversarial approach to Plaintiff's claims from the time they were made and their alignment with the interests of their own companies and not the interests of Plaintiff as a named insured under the Policy.

83.     Plaintiff is entitled to recover as damages against each of the Defendant, inclusive, all fees, expenses and costs incurred in this action to enforce their rights under the insurance Policy, plus interest thereon, according to proof.

84.     The above described conduct of the Defendant has been and continues to be unreasonable, capricious and arbitrary, and constitutes breach of the covenant of good faith and fair dealing contained in the insurance Policy referred above in this Complaint.    The above-described conduct further constitutes malicious, oppressive and despicable conduct and conscious disregard of Plaintiff's rights, and stems from improper and evil motives, including the Defendant desire to reduce or avoid their obligations to Plaintiff, so as to justify an award of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION

### Declaratory Relief

### (By Plaintiff and Against STATE FARM)

85.     Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

86.     As set forth above, Defendant, among other things, agreed to investigate, adjust, defend and/or indemnify Plaintiff as to any claims made in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action seeking damages because of a "wrongful act" falling within and/or potentially falling within the coverage defined in the Policy.

87.     Defense fees and costs, including attorneys' fees and costs, experts' fees and costs, settlement, investigation, loss and adjustment fees, costs and expenses have been incurred by Plaintiff because of a "wrongful act" falling within and/or potentially falling within the coverage of, and/or as defined in, the Policy referred to hereinabove.

88.     Plaintiff provided timely notice of the claims asserted against it in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action to the Defendant. Plaintiff has performed each covenant and/or condition which on its part must be performed in order to obtain a defense under the Policy referenced hereinabove, or has been excused from so performing as a result of Defendant's

breach of its insurance agreement, including refusals to defend and/or indemnify Plaintiff among other matters. Specifically, Bridlewood and STATE FARM disputes the following:

      a.    The extrinsic evidence identifying the potential basis upon which Bridlewood is being sued for nonpayment of an invoice in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action, couched as a breach of contract, potentially arose from a "wrongful act" as defined in the Policy;

      b.    Whether the extrinsic evidence provided in conjunction with the Aztec Mechanic's Lien, Superior Mechanic's Lien, and/or Aztec Action provided sufficient facts demonstrating a possibility of coverage triggering the duty to defend;

      c.    If a trier of fact determines in the Aztec Action that the officer negligently failed to ascertain whether the wiring instructions originated from Aztec Paving, instead of the Fake Email Address, as a result of hacking on Aztec, STATE FARM had the duty to settle or indemnify Bridlewood with respect to the Aztec Action; and

      d.    STATE FARM, in denying coverage, acted unreasonably constituting a breach of the implied covenant of good faith and fair dealing, entitling Bridlewood to recover its attorney's fees and costs incurred in pursuing coverage unreasonably withheld by State Farm.

89.    A dispute has arisen between Plaintiff and Defendant in that Plaintiff contends that it was and is entitled to be defended and indemnified in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action by Defendant

pursuant to the insurance Policy and Endorsement and is entitled to be reimbursed for the attorneys' fees and costs, experts' fees and costs, and other costs and expenses in the defense, repayment, loss adjustment, mitigation, investigation and settlement and other costs and expenses incurred as a result of the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action.   Plaintiff is informed and believes and thereon alleges that Defendant unreasonably contends otherwise.

90.   An actual controversy exists between Plaintiff and the Defendant regarding the duties of Defendant to defend Plaintiff pursuant to the insurance Policy and Endorsement as to the claims asserted in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action against Plaintiff, and to indemnify Plaintiff for any damages and/or settlement monies which Plaintiff may be required to pay in connection with the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action.   A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under the insurance Policy.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

### ON THE FIRST AND SECOND CAUSES OF ACTION

1.  For compensatory damages according to proof, but in an amount within the jurisdiction of this Court;

2.  For attorney's fees and costs, according to proof;

### ON THE THIRD AND FOURTH CAUSES OF ACTION

3.    For compensatory damages according to proof, but in an amount within the jurisdiction of this Court;

4.    For attorney's fees and costs of suit in obtaining the benefits owed under the Policy, pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, according to proof;

5.     For punitive and exemplary damages according to proof;

**ON THE FIFTH CAUSE OF ACTION**

6.     For a declaratory judgment that Defendant who issued the insurance Policy referred to in this Complaint must provide a complete defense to Plaintiff as to the claims asserted in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action and Defendant is obligated to provide a full and complete defense to Plaintiff and to fully indemnify Plaintiff up to policy limits for any settlement, award or judgment;

7.     For a declaratory judgment that:

a.     The potential basis upon which Bridlewood is being sued for nonpayment of an invoice in the Aztec Mechanic's Lien, Superior Mechanic's Lien, and Aztec Action, which was couched as a breach of contract, potentially arose from a "wrongful act" as defined in the Policy;

b.     The extrinsic evidence provided in conjunction with the Aztec Mechanic's Lien, Superior Mechanic's Lien, and/or Aztec Action provided sufficient facts demonstrating a possibility of coverage triggering the duty to defend;

c.     If a trier of fact determines in the Aztec Action that the officer negligently failed to ascertain whether the wiring instructions originated from Aztec Paving, instead of the Fake Email Address, as a result of hacking on Aztec Paving, then STATE FARM has the duty to settle or indemnify Bridlewood with respect to the Aztec Action; and

d.     STATE FARM, in denying coverage, acted unreasonably constituting a breach of the implied covenant of good faith and fair dealing, entitling Bridlewood to recover its attorney's fees and costs

incurred in pursuing coverage unreasonably withheld by STATE FARM.

### ON ALL CAUSES OF ACTION

7.  For costs of suit herein; and

8.  For all such other and further relief as the Court may deem just and proper.

Dated:       February 2, 2023     **JOSEPH OLIVA & ASSOCIATES, P.C.**

By:        _/s/ Joseph L. Oliva_
Joseph L. Oliva, Esq.
Matthew R. Toothacre, Esq.
Attorneys for Plaintiff,
BRIDLEWOOD ESTATES
PROPERTY OWNERS
ASSOCIATION

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rule of Civil Procedure.

Dated:        February 2, 2023    **JOSEPH OLIVA & ASSOCIATES, P.C.**

By:        */s/ Joseph L. Oliva*
Joseph L. Oliva, Esq.
Matthew R. Toothacre, Esq.
Attorneys for Plaintiff,
BRIDLEWOOD ESTATES
PROPERTY OWNERS
ASSOCIATION