UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIDLEWOOD ESTATES PROPERTY OWNERS ASSOCIATION, a California Nonprofit Corporation,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation,<br><br>　　　　　　　　　　　Defendant. | Case No.: 23-cv-00195-AJB-AHG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Doc. No. 9)** |

Before the Court is State Farm General Insurance Company's ("Defendant" or "State Farm") motion to dismiss Bridlewood Estates Property Owners Association's ("Plaintiff" or "Bridlewood") Complaint. (Doc. No. 9.) The motion is fully briefed. For the reasons set forth below, the Court **DENIES** Defendant's motion.

I.     **BACKGROUND**[1]

Defendant insures Plaintiff under a Residential Community Association Policy ("Policy"). The Policy includes an endorsement, which provides liability coverage for the

---

[1] The following facts are taken from the FAC and assumed true for purposes of this motion. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

wrongful acts of Plaintiff's directors and officers. This action arises from Defendant's denial of insurance coverage to Plaintiff.

On September 27, 2022, Plaintiff, received an invoice totaling $123,617.00 from Aztec Paving, Inc. ("Aztec") for asphalt repairs it conducted at Plaintiff's property. The invoice was sent via email by Aztec's Project Manager, Jon Seethaler ("Seethaler"), from his email address: jon@aztecpaving.com. Later that day, Plaintiff received an email appearing to be from Seethaler, explaining that Aztec is moving away from receiving check payments to direct electronic wire transfers. The sender's email address was jon@aztecpavlng.com.

Plaintiff sent the invoice to its Treasurer, Owen Thomas ("Thomas"), for processing and copied him to the email chain with Seethaler. On September 28, 2022, Thomas received emails from Seethaler at his email address, jon@aztecpaving.com, informing him of Aztec's move to a paperless system and that payment may be sent via wire transfer. Thomas thereafter replied to Seethaler's email asking him to provide Aztec's wire transfer information.

The next day, Thomas received an email from jon@aztecpavlng.com with an attachment containing what appeared to be Aztec's wire transfer instructions. On October 3, 2022, Thomas wired $123,617.00 from Plaintiff's bank account using the wire transfer instructions provided.

Three days later, Seethaler emailed Thomas notifying him that Aztec has not yet received the wire transfer. Plaintiff subsequently discovered that the wiring instructions Thomas used to transmit payment to Aztec were sent by a fake email address, jon@aztecpavlng.com. Plaintiff believes the communications between Thomas and the fake email address occurred via hacking of Aztec's email server.

Between October and November 2022, Aztec demanded payment from Plaintiff and filed a Mechanics Lien ("Aztec Lien") on its property. Plaintiff tendered the demand and mechanics lien to Defendant, seeking coverage under the Policy's Directors and Officers Liability Endorsement. On December 16, 2022, Defendant denied coverage, asserting that

Aztec's claim against Plaintiff was not based on a wrongful act of an officer within the meaning of the Policy, but rather, Plaintiff's failure to pay a contractual obligation and debt owed.

Later in December, Aztec's subcontractor, Superior, filed a mechanics lien ("Superior Lien") against Plaintiff, and Aztec filed in San Diego Superior Court a Complaint against Plaintiff alleging breach of contract and related claims ("Aztec Complaint").

On January 13, 2023, Plaintiff tendered the Aztec Lien and Superior Lien to Defendant for defense and indemnification under the Policy. After being served with the Aztec Complaint, Plaintiff tendered it to Defendant, demanding it agree to defend and indemnify Plaintiff with respect to the Aztec Lien, Superior Lien, and Aztec Complaint. Defendant denied coverage to Plaintiff for the mechanic liens, but has not responded to Plaintiff's tender of the Aztec Complaint.

According to Plaintiff, it attached to the tender letters the email chain showing the wire instructions sent by the fake email address to Plaintiff and utilized by its Treasurer, Thomas, to wire the $123,617.00 payment to Aztec. Plaintiff alleges Defendant unreasonably denied coverage by ignoring facts made known to them that would potentially trigger coverage and placed its economic interests ahead of its insured.

Plaintiff filed the instant action against Defendant, alleging breach of contract, breach of implied covenant and good faith and fair dealing, and declaratory relief. (Doc. No. 1.) Defendant filed a motion to dismiss Plaintiff's Complaint. (Doc. No. 9.) This Order follows.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[2] Unless otherwise indicated, internal citations, quotation marks, and alterations are omitted from the case citations in this Order.

3

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To determine the sufficiency of the complaint, the court must assume the truth of all factual allegations and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Although a court must take all factual allegations in a complaint as true, it is not required to accept conclusory statements. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Defendant makes clear that disposition of its motion to dismiss turns on whether the circumstances of Plaintiff's case is covered under the Policy's Directors and Officers Liability Endorsement ("DO Endorsement"). Specifically, Defendant argues that Plaintiff has not stated a claim for breach of the Policy because there was no wrongful act within the meaning of the DO Endorsement to trigger its duty to defend and indemnify. The Court disagrees.

### A. California Liability Insurance Law[3]

Under California law, liability insurance generally "imposes two separate obligations on the insurer: (1) to indemnify its insured against third party claims covered by the policy (by settling the claim or paying any judgment against the insured); and (2) to defend such claims against its insured (by furnishing competent counsel and paying attorney fees and costs." *Howard v. Am. Nat'l Fire Ins. Co.*, 115 Cal. Rptr. 3d 42, 61 (Ct. App. 2010). "Although correlative, the duty to indemnify and the duty to defend are not coterminous." *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal. 4th 945, 958 (2001). While the duty to defend may arise as soon as damages are sought in some amount, the duty to indemnify can arise only after damages are fixed in their amount. *Id.*

---

[3] There is no dispute that California law applies.

4

In turn, "[w]here there is a duty to defend, there may be a duty to indemnify; but where there is no duty to defend, there cannot be a duty to indemnify." *Id.*

"[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). The insured bears the initial burden "to prove that an event is a claim within the scope of the basic coverage." *Royal Globe Ins. Co. v. Whitaker*, 226 Cal. Rptr. 435, 437 (Ct. App. 1986). Once established, the burden shifts to the insurer "to prove a claim covered falls within an exclusion." *Id.* As such, "[t]o prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 300 (1993) (emphasis in original).

Where a third-party claim is involved, "the test is whether the underlying action for which defense and indemnity is sought potentially seeks relief within the coverage of the policy." *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal. 4th 27, 44 (1994) (emphasis omitted). An insurer must therefore "defend against a suit even where the evidence suggests but does not conclusively establish that the loss is not covered." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 286 (2014). "Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy." *Id.* at 287. The duty is also triggered "where extrinsic facts known to the insurer suggest that the claim may be covered." *Id.* As such, "[i]f any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." *Id.* Generally, "doubt as to whether an insurer owes a duty to defend must be resolved in favor of the insured." *Id.*

In determining whether a claim creates the potential for coverage under an insurance policy, statutory rules of contract interpretation apply. *Id.* at 288. Thus, "the mutual intention of the parties at the time the contract is formed governs interpretation." *Id.* To

5

determine intent, the court looks "first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Id.* The court "must also interpret the language in context, with regard to its intended function in the policy." *Id.*

### B.     Wrongful Act Within the Meaning of the DO Endorsement

Plaintiff's causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief are all predicated on its allegations that State Farm wrongfully failed to provide defense and/or indemnity under the Policy in connection with the Aztec Lien, the Superior Lien, and the Aztec Complaint.

Pertinent here, the Policy's DO Endorsement states that State Farm "will pay those sums that the insured becomes legally obligated to pay as damages because of a 'wrongful act' to which this endorsement applies." (Doc. No. 1-3 at 18.) According to the DO Endorsement:

> "Wrongful act" means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted by an insured arising solely out, of his or her capacity as director, officer "manager" or trustee relating to the operations of your organization.

(Doc. No. 1-3 at 20.)

As to whether Plaintiff has carried its initial burden that the claim is potentially covered under the Policy, the Court finds it has. Comparing the allegations in the Aztec Complaint and the terms of the DO Endorsement, the Court does not find that Aztec's breach of contract claim is necessarily disqualified from coverage. According to Aztec, Plaintiff breached its contract with Aztec "by failing and refusing, without just cause or excuse, to pay" for services it rendered. (Doc. No. 1-14 at 4.) The DO Endorsement does not expressly exclude contractual liabilities from coverage. Indeed, it delineates nineteen different exclusions; none are for contractual violations. (Doc. No. 1-3 at 18–20.)

Moreover, Plaintiff has presented extrinsic facts known to State Farm which suggest a potential claim for coverage based on the Treasurer's error, negligence, or breach of duty. *See Hartford Cas. Ins. Co.*, 59 Cal. 4th at 287 ("duty [to defend] also exists where extrinsic facts known to the insurer suggest that the claim may be covered."). State Farm is aware of facts supporting Plaintiff's claim that its Treasurer processed the $123,617.00 payment for Aztec's invoice, "but payment was misdirected due to hacking of the contractor's email system, causing the officer of Bridlewood to wire payment into the hacker's bank account." (Doc. No. 1 at 3.) Specifically, State Farm is in possession of the email communications showing the deception that led to the Treasurer's payment error. (*Id.* at 11; Doc. No. 1-5 at 2–10.)

State Farm is also aware of Plaintiff's and Aztec's discovery exchanges in the underlying action, which show that Plaintiff raised with Aztec, as a possible defense, its Treasurer's payment to a bank account he believed belonged to Aztec. (Doc. No. 13-2 at 5.) Aztec responded that it did not receive that payment because Plaintiff's Treasurer sent the payment to a bank account that did not belong to Aztec. (*Id.* at 5, 7.) In further support of its contention that it did not receive payment, Aztec explained that Plaintiff's Treasurer "wired funds to a bank account that was provided to him in an email, with an address that was not previously used to communicate with Estimator/Project Manager, Jon Seethaler. The email address did not use the same domain name as the email address used by Estimator/Project Manager, Jon Seethaler." (*Id.* at 11.) Aztec also faults Plaintiff's Treasurer for not contacting Aztec to confirm the wiring instructions prior to transferring the funds. (*Id.*)

The Court finds the foregoing extrinsic evidence suggests a potential for coverage under the DO Endorsement because they support a finding that Plaintiff's Treasurer committed a "wrongful act" when he transmitted payment of Aztec's invoice to the wrong bank account, which in turn, gave rise to the Aztec Complaint. Had it not been for the Treasurer's mistake, Aztec would have received payment and have no cause to sue

Plaintiff. As such, Defendant's attempt to cast the Treasurer's payment error as irrelevant to the breach of contract claim is unavailing.

Defendant also argues that California law is well settled that an insured's failure to pay amounts due under a contract does not qualify as a wrongful act. In support, Defendant cites *Aug. Ent., Inc. v. Philadelphia Indem. Ins. Co.*, and similar cases where "a corporation intentionally entered into a contract, decided not to make payment on it, and looked to its D & O insurer for a bailout." 52 Cal. Rptr. 3d 908, 915 (Ct. App. 2007). This case is different.

This is not a case where an insured simply refused to pay amounts due under a contract. As previously discussed, Plaintiff did pay the $123,617.00 that Aztec invoiced. Due to its Treasurer's error, however, the payment was sent to a hacker. Had Plaintiff's Treasurer not been deceived by the hacker's communication, Aztec would have received the $123,617.00 and Plaintiff would not be liable for the loss of another $123,617.00 plus fees and interest. Because the instant case is not one where a plaintiff is merely attempting to pass on its contractual obligations to its insurer, the Court does not find it falls within the purview of California case law finding that failure to pay amounts due under a contract does constitute a wrongful act for purposes of directors and liability coverage.

Albeit unpublished, the Court finds the Ninth Circuit's ruling in *Erickson-Hall Constr. Co. v. Hartford Fire Ins. Co.*, 800 F. App'x 559 (9th Cir. 2020) persuasive and instructive. There, the court pointed out that "under California law, an insured's losses for breach of contract are not uninsurable as a matter of law." *Id.* at 560. As such, to the extent Defendant argues that losses from a breach of contract are per se not covered by insurance, the argument is without merit. "Rather, the nature of the damage and the risk involved, in light of particular policy provisions, control coverage" in a particular case. *See id.* (quoting *Vandenberg v. Superior Court*, 21 Cal.4th 815, 839 (1999)). Applying this framework, the Ninth Circuit looked at the language of the policy at issue and the allegations in the plaintiff's complaint to determine whether the nature of the damage and risk the plaintiff sought to cover "was exactly that which did in fact transpire." *Id.* at 560.

The case involved an employer who obtained fiduciary liability insurance coverage to cover risks of loss arising from potential mistakes in administering employee benefits plans. The complaint alleged that the employer's controller failed to counsel employees that their benefits plans had lapsed due to nonpayment of premiums. The controller also mishandled documents relating to the plans, including failing to receive and process premium invoices, deduct premium amounts from employees' paychecks, and paying premiums on behalf of the employer and its employees. Because the fiduciary liability insurance covers an error or omission in the administration of the benefits plans resulting in a loss, and the complaint's allegations demonstrated facts showing that the benefits plans were indeed negligently administered, resulting in the employer's loss, the Ninth Circuit found that the employer's claimed losses were not (as the district court found and Defendant here contends) amounts it was obligated to pay its employees by contract, independent of any wrongful act. *Id* at 559, 560. Indeed, the court emphasized that "*but for* the allegedly negligent acts of Erickson-Hall's Controller, the premiums would have been paid . . ." and "Erickson-Hall would never have been liable for the claimed loss amounts." *Id.* at 560 (emphasis in original).

The same is true here. The Policy's DO Endorsement states that State Farm will provide coverage for "sums that the insured becomes legally obligated to pay as damages because of a 'wrongful act.'" (Doc. No. 1-3 at 18.) A wrongful act includes any "error . . . act, omission, neglect, or breach of duty" committed by an insured "arising solely out, of his or her capacity as director, officer 'manager' or trustee relating to the operations of your organization." (*Id.* at 20.) Plaintiff's Complaint alleges that its Treasurer, an officer of its organization, wired Aztec's payment to a hacker's bank account by "failing to verify with proper diligence the proper wiring instruction to wire the payment." (Doc. No. 1 at 9.) These allegations show that the Treasurer committed an error, omission, neglect, or breach of duty arising out of his official capacity to process payments for Bridlewood. As such, the nature of the damage and risk the DO Endorsement covers is "exactly that which did in fact transpire." *Erickson-Hall Constr. Co.*, 800 F. App'x at 560.

The Court agrees with Plaintiff that to the extent liability is found in the Aztec action, the basis of liability would be the Treasurer's alleged wrongful act, triggering coverage. Like in *Erickson-Hall*, but for the Treasurer's negligent acts, Aztec's payment would not have been misdirected into a hacker's account, Aztec would have received the payment, and Plaintiff would not have incurred the claimed losses.

Based on the foregoing, the Court finds that Plaintiff has shown that its claimed loss falls within the basic scope of coverage.[4] *See Hartford Cas. Ins. Co.*, 59 Cal. 4th at 288 ("the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." (emphasis in original)). And because Defendant does not argue that any policy exclusion bars coverage, it cannot meet its burden to conclusively establish that the loss is not covered. *See id.* at 287 ("An insurer must defend against a suit even where the evidence suggests, but does not conclusively establish, that the loss is not covered."). Accordingly, the Court denies Defendant's motion to dismiss.

## IV.   CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss is **DENIED**. Defendant must file an answer to the Complaint no later than April 1, 2024.

**IT IS SO ORDERED**.

Dated:  March 18, 2024

Hon. Anthony J. Battaglia
United States District Judge

---

[4] At the very least, the instant case presents a close call, and generally, "doubt as to whether an insurer owes a duty to defend must be resolved in favor of the insured." *Hartford Cas. Ins. Co.*, 59 Cal. 4th at 287.